IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-71

No. 322A20

Filed 18 June 2021

IN THE MATTER OF: B.S.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 16 March 2020 by Judge Monica Bousman in District Court, Wake County. This matter was calendared for argument in the Supreme Court on 22 April 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Mary Boyce Wells for petitioner-appellee Wake County Human Services.*

*Michelle FormyDuval Lynch for appellee Guardian ad Litem.*

*Garron T. Michael for respondent-appellant father.*

BARRINGER, Justice.

Respondent appeals from the order terminating his parental rights to his minor child B.S. (Bailey).[1] The trial court found that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (5) and that termination was in Bailey's best interests. Respondent has not challenged on appeal the trial court's conclusion that the ground for termination pursuant to

---

[1] The pseudonym "Bailey" is used throughout this opinion to protect the identity of the juvenile and for ease of reading.

N.C.G.S. § 7B-1111(a)(5) existed or that termination was in Bailey's best interests. Respondent instead contends that this Court should reverse the trial court's order as to this ground for termination of respondent's parental rights because he received ineffective assistance of counsel. As we conclude that respondent has not carried his burden to show ineffective assistance of counsel, we affirm the trial court's order terminating the parental rights of respondent to Bailey.

## I.    Background

Wake County Human Services (WCHS) became involved with Bailey at the time of her birth when Bailey and her mother tested positive for cocaine. Bailey's mother was also homeless and suffering from mental health issues which required hospitalization.

On 18 July 2018, WCHS filed a petition alleging that Bailey and her two half-siblings were neglected juveniles.[2] Respondent and Bailey's mother subsequently consented to the entry of an order adjudicating Bailey a neglected juvenile, which was entered on 16 October 2018. In this consent order on adjudication and disposition, the trial court ordered respondent to submit to genetic marker testing and to establish legal paternity if found to be the biological father of Bailey. At the time, respondent was incarcerated and denied knowing Bailey's mother and being Bailey's biological father. Nevertheless, on 15 January 2019, respondent was determined to

---

[2] This appeal does not involve Bailey's half-siblings or her mother.

be the biological father of Bailey after respondent submitted to genetic marker testing. Respondent continued to deny that he was the biological father of Bailey until a social worker sent him a copy of the genetic marker report in late January 2019.

After respondent was released from incarceration, WCHS filed a motion for termination of the parental rights of Bailey's mother, respondent, and the known or unknown fathers of Bailey's two half-siblings. WCHS alleged that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (5). The termination-of-parental-rights hearing was conducted over four days in November 2019 and January and February 2020. On 16 March 2020, the trial court entered an order terminating respondent's parental rights. The trial court concluded that WCHS had proven all three alleged grounds for termination, *see* N.C.G.S. § 7B-1111(a)(1), (2), (5), and that termination of respondent's parental rights was in Bailey's best interests. The trial court's findings of fact included that:

> [Respondent] was served with a copy of the petition filed July 18, 2018 which contained the name of the child and her date of birth. He had access to paper, envelopes, and stamps while he was incarcerated. He corresponded via U.S. Mail with both the social worker and his attorney in this case. He had the means to file an affidavit of paternity with [WCHS]. The same attorney has been appointed to represent him in this case and also in cases involving two other children. In a termination of parental rights order filed for two of [respondent]'s other children on August 7, 2019, finding of fact #31 indicates that [respondent] filed an affidavit of parentage for another of his children. In orders filed on October 16, 2018, February 1, 2019, and July 24, 2019 the [c]ourt ordered . . . [respondent] to

establish "legal paternity" if genetic marker testing showed him to be the biological father of the child. While N.C.G.S. §[ ]7B-1111(a)(5) does not require that an unwed father have actual notice that a ground exist[s] for termination of parental rights unless paternity and/or legitimation is established prior to the filing of a termination of . . . parental rights action, [respondent] was on "notice" that he was to establish legal paternity beginning with the disposition order filed October 16, 2018. He had "notice" that he could have sired a child when he had a sexual encounter with [Bailey's mother]. He further knew by late January 2019 that genetic marker testing showed him to be the biological father of [Bailey] which was more than six months before the motion to terminate his parental rights was filed.

¶ 5    Respondent appealed.

¶ 6    On appeal, respondent challenges several findings of fact as not supported by competent evidence and the trial court's conclusion that grounds existed for termination pursuant to N.C.G.S. § 7B-1111(a)(1) and (2). However, respondent has neither challenged the trial court's conclusion that the ground for termination pursuant to N.C.G.S. § 7B-1111(a)(5) had been established nor challenged any findings of fact supporting this conclusion. Thus, it is undisputed that respondent failed to establish legal paternity as required by the trial court's order and failed to do any of the acts specified in N.C.G.S. § 7B-1111(a)(5)(a)–(e).

¶ 7    Subsection 7B-1111(a)(5) provides that a trial court may terminate parental rights upon a finding that:

The father of a juvenile born out of wedlock has not, prior to the filing of a petition or motion to terminate parental rights, done any of the following:

a. Filed an affidavit of paternity in a central registry maintained by the Department of Health and Human Services. The petitioner or movant shall inquire of the Department of Health and Human Services as to whether such an affidavit has been so filed and the Department's certified reply shall be submitted to and considered by the court.

b. Legitimated the juvenile pursuant to provisions of G.S. 49-10, G.S. 49-12.1, or filed a petition for this specific purpose.

c. Legitimated the juvenile by marriage to the mother of the juvenile.

d. Provided substantial financial support or consistent care with respect to the juvenile and mother.

e. Established paternity through G.S. 49-14, 110-132, 130A-101, 130A-118, or other judicial proceeding.

N.C.G.S. § 7B-1111(a)(5) (2019).

¶ 8     Respondent, however, argues for the first time on appeal that his appointed trial counsel was ineffective. Respondent contends that because he received ineffective assistance of counsel, this Court should reverse the portion of the trial court's order concluding that the ground set forth in N.C.G.S. § 7B-1111(a)(5) existed to terminate his parental rights.

## II. Ineffective Assistance of Counsel Claim

As "a finding of only one ground is necessary to support a termination of parental rights," *In re A.R.A.*, 373 N.C. 190, 194 (2019), and respondent has not challenged the conclusion or findings of fact supporting the trial court's conclusion that the ground set forth in N.C.G.S. § 7B-1111(a)(5) existed to terminate his parental rights, we must affirm the trial court's order terminating respondent's parental rights if respondent has not shown that he received ineffective assistance of counsel. The Juvenile Code provides that "[i]n cases where the juvenile petition alleges that a juvenile is abused, neglected, or dependent," N.C.G.S. § 7B-602(a) (2019), and "[w]hen a petition [for termination of parental rights] is filed," the parent "has the right to counsel, and to appointed counsel in cases of indigency, unless the parent waives the right," N.C.G.S. § 7B-1101.1(a) (2019). When addressing a contention by a respondent that he or she received ineffective assistance of counsel, this Court has explained that:

> Parents have a right to counsel in all proceedings dedicated to the termination of parental rights. Counsel necessarily must provide effective assistance, as the alternative would render any statutory right to counsel potentially meaningless. To prevail on a claim of ineffective assistance of counsel, respondent must show that counsel's performance was deficient and the deficiency was so serious as to deprive him of a fair hearing. To make the latter showing, the respondent must prove that there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings.

*In re G.G.M.*, 2021-NCSC-25, ¶ 35 (cleaned up).

¶ 10     Respondent's argument in his brief to this Court is as follows:

>           Although the trial court ordered him to "establish legal paternity" in three separate orders dating back to 16 October 2018, no action was ever undertaken by [respondent] to do so. Nothing contained in the record on appeal or within the transcript of the termination hearing indicate appointed counsel ever advised or informed [respondent] of how or why he needed to "establish legal paternity" as [the] court ordered. Nothing in the record indicates that appointed counsel sent or provided an affidavit of paternity to [respondent] prior to the motion to terminate parental rights being filed. Instead, appointed counsel argued during its closing on grounds that WCHS failed to make reasonable efforts to achieve reunification by assisting [respondent] in executing an affidavit of paternity.
>           Appointed counsel's failure to advise, inform or assist [respondent] with filing an affidavit of paternity, or otherwise legally establish paternity as [the] court ordered in the underlying juvenile case fell below an objective standard [of] reasonableness. Specifically, the trial court formally ordered [respondent] to establish legal paternity over nine months before the motion to terminate parental rights was filed on 2 August 2019. Moreover [respondent] was transported to Wake [C]ounty on both 7 May 2019 and 24 June 2019 for scheduled hearings affording appointed counsel face to face access to [respondent] despite his incarceration. Had appointed counsel properly informed, advised, or assisted [respondent] in establishing legal paternity, a single filing would have precluded the trial court from terminating his parental rights pursuant to N.C.[G.S.] § 7B-1111(a)(5) (2019).

¶ 11     WCHS and the guardian ad litem contend that respondent has failed to show he received ineffective assistance of counsel and that respondent has not shown that

had counsel assisted with establishing paternity that there is a reasonable probability there would have been a different outcome in the proceeding.

¶ 12        We agree that respondent has not met his burden to establish ineffective assistance of counsel. This State's jurisprudence has "recognized that there could be no law if knowledge of it was the test of its application" and has not permitted a respondent's purported absence of knowledge of his or her parental duties to protect the respondent from the termination of his or her parental rights. *In re Wright*, 64 N.C. App. 135, 139 (1983); *see also In re S.E.*, 373 N.C. 360, 366 (2020) (quoting *In re Wright* in a parenthetical); *In re T.D.P.*, 164 N.C. App. 287, 289 (2004) (quoting *In re Wright* in a parenthetical), *aff'd per curiam,* 359 N.C. 405 (2005). Thus, when addressing a claim of ineffective assistance of counsel for failing to advise the respondent of what he needed to do to regain custody of a juvenile child, this Court has recognized that ignorance of an inherent duty of a parent to their child does not excuse a parent's failure to fulfill this duty, and as a result, any alleged failure by counsel to advise concerning these inherent duties cannot be prejudicial. *In re J.M.*, 2021-NCSC-48, ¶¶ 35–36.

¶ 13        Based on the foregoing, our examination of the record, and the undisputed factual findings, we conclude that there is no reasonable probability that any of the alleged omissions by respondent's counsel affected the outcome of the termination-of-parental-rights hearing. *See State v. Braswell*, 312 N.C. 553, 563 (1985) ("[I]f a

reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient."). Respondent's argument of ineffective assistance of counsel is without merit.

### III.    Conclusion

Because respondent has not challenged on appeal the trial court's conclusion that the ground for termination pursuant to N.C.G.S. § 7B-1111(a)(5) existed or that termination was in Bailey's best interests and because we conclude that respondent's claim of ineffective assistance of counsel is without merit, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.